## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

WOODRIDGE CHURCH,

        Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                         Civil File No. 11-275 (MJD/FLN)

CITY OF MEDINA,

        Defendant.

Charles R. Shreffler, Jr., Shreffler Law, PLLC, and Joel L. Oster, Alliance Defense Fund, Counsel for Plaintiff.

George C. Hoff, Kimberly B. Kozar, and David M. Quealy, Hoff, Barry & Kozar, P.A., Counsel for Defendant.

## I.      INTRODUCTION

This matter is before the Court on Defendant City of Medina's Motion to Partially Dismiss Plaintiff's Complaint.  [Docket No. 13]  The Court heard oral argument on February 10, 2012.

Defendant seeks to dismiss Counts One, Two, Five, and Eight in their entirety because the claims are not ripe; dismiss Counts Six and Seven, to the extent they are based on the moratorium, because the claims are moot; and

1

dismiss the as-applied portions of Counts Three and Four because the claims are not ripe.  The Court grants in part and denies in part Defendant's motion. Because Plaintiff has not obtained any decision, let alone a final decision, from Defendant regarding Plaintiff's expansion plans, the as-applied claims based on Defendant's creation of a new zoning district are not ripe.  Because Plaintiff has pled claims for damages based on the moratorium, the moratorium claims are not moot.

## II.    BACKGROUND

### A.    Factual Background

Plaintiff Woodridge Church ("Church") is located on approximately 27.6 acres of land in Defendant the City of Medina, Minnesota ("City").  (Compl. ¶¶ 1, 12.)  When the Church purchased the land, the property was zoned Rural Residential ("RR"), which permitted church use as a conditional right.  (Id. ¶13.)

The Church broke ground for the construction of a sanctuary in 1996, ultimately holding its first service in the building in January of 1997.  (Id. ¶ 19.) Since this time, the Church has continued to grow, facilitating a need to expand the existing building. (Id. ¶¶ 21-22.)

In the spring of 2008, the Church "initiated conversation with City staff, informing them of the Church's intent to expand their current facility by adding approximately 19,000 square feet (split over 2 levels) to their existing space of approximately 28,000 square feet[,]" resulting in a total square footage of 47,000 square feet.  (Id. ¶ 27.)  After working with City officials, architects, and builders, the Church reduced its initial expansion plans, seeking 14,000 additional square feet for a total building size of 42,000 square feet.  (Id. ¶ 29.)

The Church submitted a permit application to the City Planning Department on November 10, 2008.  (Hoff Aff., Ex. 2.)  In January of 2009, the Church submitted plans to the City Council for its proposed construction. (Compl. ¶ 30.)  The Complaint alleges that the City refused to approve the Church's plans.  (Id. ¶ 32.)

In February of 2009, the City placed a one-year moratorium on the construction of all church buildings within the City.  (Compl. ¶ 33.)  The Church's application was the only church construction application pending before the City Council at that time.  (Id. ¶ 35.)  During the period of the moratorium, the City created a new zoning district called the "Rural Public/Semi

Public" ("RPS").  (Id. ¶ 37.)  The Church, City Hall, and an additional church were included in this newly zoned district.  (Id.)

The City Planning Commission recommended a maximum building size in the RPS district of 45,000 total square feet, with a 35,000 square foot cap on a building's footprint.  (Compl. ¶ 39.)  In May or June of 2009, the City Council, rejecting this suggestion, implemented a maximum square footage of 40,000 square feet and lifted the city-wide moratorium.  (Id. ¶¶ 40, 43.)

The City's Planning Commission was scheduled to consider the Church's application for a conditional use permit and interim use permit at its meeting on August 11, 2009.  (Hoff Aff., Ex. 2.)  The Church withdrew its permit application for the proposed expansion on August 10, 2009.  (Id.)

## B. Procedural History

On February 3, 2011, the Church filed a complaint against the City of Medina in this Court.  The Church's Complaint alleges: Count One, Violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"); Count Two, Violation of the Free Exercise Clause of the First Amendment; Count Three, Violation of the Equal Protection Clause of the Fourteenth Amendment; Count Four, Violation of the Free Speech Clause of the First Amendment; Count

4

Five, Violation of the Right to Peaceable Assembly under the First Amendment;

Count Six, Violation of the Due Process Clause of the Fourteenth Amendment;

Count Seven, Violation of the Establishment Clause of the First Amendment; and

Count Eight, Violation of the Right of Conscience secured under Article 1,

Section 16 of the Minnesota Constitution.

Defendant has now filed a Motion to Partially Dismiss the Plaintiff's

Complaint under the Federal Rule of Civil Procedure 12(b)(1) for lack of subject

matter jurisdiction.

## III.    DISCUSSION

### A.     Standard of Review

A plaintiff bears the burden of establishing the Court's subject matter

jurisdiction.  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006).

> In order to properly dismiss for lack of subject matter jurisdiction
> under Rule 12(b)(1), the complaint must be successfully challenged
> on its face or on the factual truthfulness of its averments.  In a facial
> challenge to jurisdiction, all of the factual allegations concerning
> jurisdiction are presumed to be true and the motion is successful if
> the plaintiff fails to allege an element necessary for subject matter
> jurisdiction.

Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993) (citations omitted).  "In a factual

attack, the court considers matters outside the pleadings, and the non-moving

party does not have the benefit of 12(b)(6) safeguards." Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).  Should the court determine at any time that it lacks subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

Here, Defendant asserts a facial challenge to jurisdiction.  However, Defendant has submitted two exhibits – an August 10, 2009, email and August 10, 2009 letter, evidencing the Church's withdrawal of its permit application – and asks that the Court consider them as public records.  The Church does not object to the characterization of these documents as public records.  Nor does the Church dispute that it withdrew its permit application the day before the hearing before the City's Planning Commission.  The Complaint does not assert that the Church completed a permit application.  In deciding a 12(b)(1) facial motion to dismiss, the Court considers the pleadings, "some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008) (citations omitted) (addressing 12(b)(6) and 12(c) motions)); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 (8th Cir. 2003) ("A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) which is limited to a facial attack on the

pleadings is subject to the same standard as a motion brought under Rule

12(b)(6).") (citation omitted).  Therefore, the Court may consider Defendant's

exhibits when analyzing this facial challenge.

### B.     Ripeness

"The ripeness doctrine flows both from the Article III 'cases' and

'controversies' limitations and also from prudential considerations for refusing to

exercise jurisdiction." Neb. Pub. Power Dist. v. MidAmerican Energy Co., 234

F.3d 1032, 1037 (8th Cir. 2000).  The doctrine's "basic rationale is to prevent the

courts, through avoidance of premature adjudication, from entangling

themselves in abstract disagreements."  Id. (quoting Abbott Labs. v. Gardner, 387

U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99

(1977)).  A two-prong test has been delineated to determine the ripeness of a

particular case: an evaluation of both (1) "the fitness of the issues for a judicial

decision," and (2) "the hardship to the parties of withholding court

consideration."  Neb. Pub. Power Dist., 234 F.3d at 1038 (citations omitted).  "The

issue of ripeness . . . is one of subject matter jurisdiction."  Dakota, Minn. & E.

R.R. Corp. v. S.D., 362 F.3d 512, 520 (8th Cir. 2004) (citation omitted).

Defendant asserts that Counts One, Two, Five, and Eight, in their entirety, and Counts Three and Four in part, fail because the Church's as-applied statutory and constitutional challenges are not ripe.  (Counts Six and Seven contain challenges to the moratorium, which the City concedes are not unripe. The City's argument regarding whether Counts Six and Seven are moot is addressed in Section III(C).)

### 1.    <u>Williamson</u> Ripeness Standard

The Supreme Court set forth the ripeness requirement for challenging local land use decisions in <u>Williamson County Regional Planning Commission v. Hamilton Bank</u>, 473 U.S. 172 (1985).  In <u>Williamson</u>, the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." <u>Id.</u> at 186.  The Supreme Court further held that, when there was no evidence that the applicant had applied for a variance and the government entity had the power to grant variances, its takings claim was not ripe.  <u>Id.</u> at 193-94.  "[W]hether it is analyzed as a deprivation of property without due process under the Fourteenth

Amendment, or as a taking under the Just Compensation Clause of the Fifth Amendment," the applicant's claim was premature because there would be no final decision regarding how the local government's regulations would be applied to the property until the applicant applied for a variance.  Id. at 200.

A final decision from the governmental entity is "a final, definitive position as to how [the plaintiff] could use the property from the entity charged with implementing the zoning regulations."  Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2d Cir. 2005) (citing Williamson Cnty., 473 U.S. at 186).

The finality requirement is appropriate in land use cases because it (1) aids in the development of a full record, (2) provides a court with knowledge as to how a regulation will be applied to a particular parcel of land, (3) may obviate the need for judicial review if a variance is granted providing the requested relief, thereby supporting the principle that disputes should be decided on non-constitutional grounds whenever possible, and (4) demonstrates the judiciary's appreciation that land use disputes are uniquely matters of local concern more appropriately suited for local resolution.  Murphy, 402 F.3d at 348.

## 2.    Facial or As-Applied Challenge

First, the Court must determine whether the challenged counts, Counts

One through Five and Eight, contain facial or as-applied claims.  "Facial

challenges are exempt from the first prong of the <u>Williamson</u> ripeness analysis

[the finality requirement] because a facial challenge by its nature does not

involve a decision applying the statute or regulation."  <u>Hacienda Valley Mobile</u>

<u>v. Morgan Hill</u>, 353 F.3d 651, 655 (9th Cir. 2003).  A facial challenge "tests a law's

constitutionality based on its text alone and does not consider the facts or

circumstances of a particular case."  <u>United States v. Marcavage</u>, 609 F.3d 264,

273 (3d Cir. 2010).  Such facial challenges are decided "regardless of its particular

application to a specific set of facts."  <u>Pursley v. City of Fayetteville</u>, 820 F.2d 951,

957 (8th Cir. 1987).  In contrast, an as-applied challenge does not "contend that

the law is unconstitutional as written but that its application to a particular

person under particular circumstances deprived that person of a constitutional

right."  <u>Marcavage</u>, 609 F.3d at 273.

Defendant asserts that Counts One, Two, Five and Eight are as-applied

challenges only to the zoning ordinance's application.  It claims that Counts

Three and Four contain both as-applied and, unchallenged, facial claims.

Plaintiff argues that Counts One through Five and Eight challenge the validity of the ordinance and moratorium as written, in addition to their application to Plaintiff specifically. The text of Counts One through Five and Eight does not refer to the moratorium; in those counts, Plaintiff has only challenged the application of "Defendant's Zoning Code and actions." In contrast, Counts Six and Seven are explicitly based upon both the "Zoning Code" and the "moratorium." If the Church seeks to assert Counts One through Five and Eight against the City based on the moratorium, it must seek leave to amend its Complaint to plead such claims.

The Church further argues that it asserts both facial and applied challenges to the zoning decision in each count. The Court has carefully reviewed the Complaint, and the Church's facial challenge is not apparent in all Counts. Thus, while Counts Three and Four expressly provide that the Church asserts both facial and as-applied challenges, Counts One, Two, Five, and Eight only allege violations based on the City's treatment of the Church and the burden imposed on the Church's protected rights. Only as-applied challenges appear in Counts One, Two, Five, and Eight.

At oral argument, the Church unambiguously expressed its intent to plead all claims as both facial and as-applied challenges.  The Church must seek leave to amend its Complaint to clearly plead a facial challenge in each count.  For purposes of this Court's <u>Williamson</u> ripeness analysis, it is undisputed that Counts One through Five and Count Eight all, at a minimum, plead as-applied challenges.

### 3. Applicability of the <u>Williamson</u> Finality Requirement to the Church's Claims

The Court will address the applicability of the <u>Williamson</u> finality requirement to each particular legal theory asserted in the challenged counts of the Complaint.  However, overall, the counts are all based on the same allegations.  In each count, the Church asserts that "Defendant's Zoning Code and actions" caused violations of RLUIPA, the U.S. Constitution, or the Minnesota Constitution.  All of the counts contain as-applied challenges based on the City's action of creating the RPS district and limiting all buildings in that zone to 40,000 square feet when the Church's expansion plans contemplated a finished building containing 42,000 square feet.  All counts are based on the Church's assertion that it is harmed by its inability to expand its building beyond 40,000 square feet.  (Compl. ¶ 44.)

12

The Complaint makes no allegation of a final decision by the City regarding the application of the 40,000 square foot limitation to the Church's particular expansion plan for its property.  It does not allege even one meaningful application for a variance.  Additionally, the undisputed public record demonstrates that the Church withdrew its application before the City had any opportunity to review the application and make any decision on the Church's desired plans.  Furthermore, there is no allegation that the City has taken or threatened any adverse actions against the Church, such as issuing a cease and desist order, assessing fines, or initiating a civil enforcement action.

A decision on the merits of any of the counts would require the decisionmaker to know how the City would have responded to the Church's withdrawn permit application.  Regardless of the particular legal theory asserted, the analysis is the same for the challenged counts: the City's decision on the Church's application could provide the relief that the Church seeks without requiring this Court to become entangled in constitutional disputes.  The City's decision would also allow the Court to know how the zoning ordinance would be applied to the Church's property, so that it could apply the appropriate statutory or constitutional analysis to the City's treatment of the Church.  The

Murphy court's reasoning for the application of the final decision rule squarely applies here.  Moreover, the hardship to the Church of delaying federal court review is minimal because the Church may achieve its desired outcome by simply following through on the application process that was only one day away from a hearing.  And, if the Church's application is denied and it receives a final rejection from the City, the issues will be clarified for a federal court to apply a cogent constitutional and statutory analysis to the Church's claims.  The Church's current use of its property is unaffected, only its ability to proceed with its future construction plans is at issue here.

The Court now turns to the applicability of the Williamson finality requirement to each particular legal theory pled in the challenged counts.

### a)      Count One, Violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")

The Church asserts a claim under RLUIPA's substantial burdens provision:

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc(a)(1).

The Church also bases its RLUIPA claim on violations of the

discrimination and exclusion provision:

(1) Equal terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

(2) Nondiscrimination

No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

(3) Exclusions and limits

No government shall impose or implement a land use regulation that--

(A) totally excludes religious assemblies from a jurisdiction; or

(B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42 U.S.C.A. § 2000cc(b).

The Williamson final decision requirement applies to Count One, Violation

of RLUIPA.  See Guatay Christian Fellowship v. County of San Diego, 670 F.3d

957, 979 (9th Cir. 2011) ("All of the circuits to address this issue have applied the final decision requirement to RLUIPA claims, as well as to related First Amendment-based § 1983 claims when they were presented, reasoning that the requirement of a final decision—either on a variance application, a special use permit application, or through a single appeal of a denied permit—served the purposes of the ripeness doctrine . . . .") (citations omitted); see also Miles Christi Religious Order v. Twp. of Northville, 629 F.3d 533, 537 (6th Cir. 2010); Congregation Anshei Roosevelt v. Planning & Zoning Bd. of the Borough of Roosevelt, 338 Fed. Appx. 214, 217–19 (3d Cir. 2009); Grace Cmty. Church v. Lenox Twp., 544 F.3d 609, 616-17 (6th Cir. 2008); Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 350-51 (2d Cir. 2005).

The Court cannot determine "the extent, if any, of the [Church's] alleged RLUIPA injury without a final determination as to whether the [expansion] will be permitted on the property."  Congregation Anshei Roosevelt, 338 Fed. Appx. at 219.  Here, the Court cannot analyze whether the Church faces a substantial burden, whether the City will impose a land use regulation in a manner that treats the Church on less than equal terms with a nonreligious institution, whether the land use regulation discriminates against the Church on the basis of

religion, or whether the City will impose a land use regulation that unreasonably

limits religions assemblies without knowing whether the City would permit the

Church to complete its desired expansion.  "By requiring the Church to seek

recourse at the local level, this approach may provide the Church with relief

without expending further court resources and it will enable us to respect

principles of federalism which counsel in favor of resolving land use disputes

locally."  Guatay Christian Fellowship, 670 F.3d at 979.  The Williamson finality

requirement applies to Count One.

> **b)  Count Two, Violation of the Free Exercise Clause of the First Amendment**

The Court concludes that the same ripeness determination that applies to

the Church's RLUIPA claim applies to its First Amendment Free Exercise claim.

See Miles Christi Religious Order, 629 F.3d at 536, 542; Murphy, 402 F.3d at 350,

354.

> **c)  Count Three, Violation of the Equal Protection Clause of the Fourteenth Amendment**

The final decision requirement also applies to equal protection claims

based on land use decisions.  See McKenzie v. City of White Hall, 112 F.3d 313,

317 (8th Cir. 1997) ("Because the City's decisions to deny zoning and building

permits absent surrender of the privacy buffer were final, the [plaintiffs'] due

process and equal protection claims are ripe."); Christopher Lake Dev. Co. v. St.

Louis Cnty., 35 F.3d 1269, 1273 (8th Cir. 1994) (holding that Williamson finality

requirement applies to as-applied equal protection and due process claims).  See

also Strickland v. Alderman, 74 F.3d 260, 265 (11th Cir. 1996) ("As applied due

process and equal protection claims are ripe for adjudication when the local

authority has rendered its final decision with respect to the application of the

regulation.").

> **d)  Count Four, Violation of the Free Speech Clause of the First Amendment**

The finality requirement also applies to a free speech clause challenge to a

local land use requirement.  Miles Christi Religious Order, 629 F.3d at 537 (citing

Insomnia Inc. v. City of Memphis, 278 Fed. Appx. 609, 613 (6th Cir.  2008)).  The

Court acknowledges that the Williamson final decision requirement might not

apply if a plaintiff alleges an injury separate from the passage and application of

the zoning ordinance to the plaintiff.  For example, a First Amendment claim

based on the governmental entity's treatment of the plaintiff during the

application process itself – such as imposing egregious delays and fees on

plaintiff in retaliation for the plaintiff's exercise of its First Amendment rights –

could fall outside of <u>Williamson</u>.  <u>See</u> <u>Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara</u>, 344 F.3d 822, 830 (9th Cir. 2003).  The same reasoning might apply to independent equal protection or procedural due process claims.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Bannum, Inc. v. City of St. Charles, Mo.</u>, 2 F.3d 267, 272 (8th Cir. 1993) (holding equal protection claim ripe, although plaintiff had never applied for a conditional use permit, because claim was narrowly based on "the requirement that it must apply for a conditional permit"); <u>Nasierowski Bros. Inv. Co. v. City of Sterling Heights</u>, 949 F.2d 890, 893-94 (6th Cir. 1991) (holding <u>Williamson</u> finality requirement did not apply to developer's procedural due process claim based on the allegation that the City amended the zoning ordinance without affording it notice and an opportunity to be heard).  The Church has pled no such claims here.  Its claims – apart from the moratorium claims discussed later in this opinion – are based on the creation of the RPS zone, the implementation of the 40,000 square foot limit, and the application of the RPS zone and 40,000 square foot limit to the Church, all preventing the Church from proceeding with its desired expansion.

> **e)      Count Five, Violation of the Right to Peaceable Assembly under the First Amendment**

The final decision requirement also applies to the Church's assertion that the zoning decision violated its right to peaceable assembly under the First Amendment.  See Murphy, 402 F.3d at 353-54.

> **f)   Count Eight, Violation of the Right of Conscience Secured under Article 1, Section 16 of the Minnesota Constitution.**

Analysis of a Minnesota freedom of conscience clause claim consists of a four-pronged test:

> whether the objector's belief is sincerely held; whether the state regulation burdens the exercise of religious beliefs; whether the state interest in the regulation is overriding or compelling; and whether the state regulation uses the least restrictive means.

Hill-Murray Fed'n of Teachers v. Hill-Murray High Sch., 487 N.W.2d 857, 865 (Minn. 1992) (citations omitted).

Minnesota has not addressed whether the Williamson final decision requirement applies to land use claims based on Article 1, Section 16 of the Minnesota Constitution.  However, Minnesota has adopted the Williamson final decision rule regarding a government land use decision in a takings case.  See, e.g., Kottschade v. City of Rochester, 760 N.W.2d 342, 348 (Minn. Ct. App. 2009), review denied (Minn. Apr. 29, 2009).  Minnesota courts have adopted the reasoning of the federal courts that a court must "know[] the nature and extent of

permitted development before adjudicating the constitutionality of the regulations that purport to limit it." <u>Hunkins v. City of Minneapolis</u>, 508 N.W.2d 542, 544 (Minn. Ct. App. 1993) (quoting <u>Lucas v. S.C. Coastal Council</u>, 505 U.S. 1003, 1011 (1992)).  "Where a land owner has not yet obtained a final decision regarding application of a land regulation to the particular property in question, the claim is not ripe for review." <u>Thompson v. City of Red Wing</u>, 455 N.W.2d 512, 515-16 (Minn. Ct. App. 1990) (citing <u>Williamson</u>, 473 U.S. at 186).

The Court concludes that it cannot be determined, in an as-applied challenge, whether the City's regulation burdens the exercise of the Church's religious beliefs without any indication that the City would actually apply the 40,000 square foot limit to the Church's property.  Therefore, the <u>Williamson</u> final decision requirement applies to the Church's Minnesota constitutional claim, as well.

### 4.    Futility

The Church argues that, even if the <u>Williamson</u> finality requirement applies to its as-applied claims, futility excuses it from pursuing its application before the City.

A plaintiff may avoid the final decision requirement if an application for a permit "would be an exercise in futility."  S.D. Mining Ass'n, Inc. v. Lawrence Cnty., 155 F.3d 1005, 1009 (8th Cir. 1998).   "That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 349 (2d Cir. 2005) (citations omitted).  See also S.D. Mining Ass'n, 155 F.3d at 1008-09 (holding that claim challenging ordinance banning new surface mining permits and amendments to existing permits was ripe because application for surface mining permit would be futile when the governmental entity had no power to grant surface mining permits to plaintiffs).

Most courts hold that a plaintiff cannot invoke the futility application until it has made at least one meaningful application for the permit or variance.  See, e.g., Guatay Christian Fellowship v. County of San Diego, 670 F.3d 957, 982 (9th Cir. 2011); Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 353 n.7 (2d Cir. 2005); DLX, Inc. v. Kentucky, 381 F.3d 511, 525 (6th Cir. 2004); Gilbert v. City of Cambridge, 932 F.2d 51, 61 (1st Cir. 1991); Unity Ventures v. Lake County, 841 F.2d 770, 775-76 (7th Cir. 1988).  See also Williamson Cnty., 473 U.S. at 190 ("[I]n

the face of [the developer's] refusal to follow the procedures for requesting a variance" the developer had "not yet obtained a final decision regarding how it [would] be allowed to develop [the] property.").

The Church argues that pursuing even one application for a variance would have been a futile endeavor.  It notes that it submitted its application, and while the application was pending, the City placed a moratorium on all church construction within the City.  The City then amended its code, creating the new RPS district covering the Church's property, which set a maximum facility size below that sought by the Church in its permit application.  The Church argues that, at a minimum, it is entitled to take discovery on the issue of whether pursuing the permitting application further would have been futile.

First, the majority view is that, in order to invoke the futility exception, the plaintiff must have completed at least one meaningful attempt for a variance. Here, it is undisputed that the Church has not followed through on even one application to the City to approve its construction plans.  It withdrew its application the day before the City was to hear its permit application.  The City has never had the opportunity to consider the Church's application.  The futility exception to the final decision requirement "serves only to protect property

owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.  The futility exception does not alter an owner's obligation to file one meaningful development proposal." S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990).

Second, even if the Eighth Circuit were not to apply the one meaningful application rule, the Church has made no argument and has pointed to no pleading or evidence to support a claim of futility in this case.  It is undisputed that the City has the legal authority to issue variances.  See Minn. Stat. § 462.357, subd. 6.  Cf. Murphy, 402 F.3d at 349 (noting that the futility exception would apply "when a zoning agency lacks discretion to grant variances").  Additionally, under Minnesota law, if zoning ordinances are changed or modified during the pendency of a land use application, municipalities have the discretion to apply the ordinances that were in effect at the time the application was filed.  See Eagle Lake of Becker Cnty. Lake Ass'n v. Becker Cnty. Bd. of Comm'rs, 738 N.W.2d 788, 794 (Minn. Ct. App. 2007).  Because the City created the RPS zoning district during the pendency of the Church's application, the City could have applied the

pre-existing zoning ordinance to the Church's application, thereby allowing the

construction of buildings greater than 40,000 square feet.

Moreover, the City's enactment of the temporary moratorium and the new

zoning ordinance alone cannot serve as the basis for a futility claim.  See GBT

P'ship v. City of Fargo, No. A3-00-50, 2001 WL 1820144, at *6 (D.N.D. Nov. 27,

2001) (holding that city's enactment of temporary moratorium could not serve as

a basis for futility claim); New Horizon Inv. Corp. v. Mayor & Mun. Council of

the Twp. of Belleville, 04-CV-3973, 2008 WL 4601899, at *6 (D.N.J. Oct. 15, 2008)

("The mere passage of the [] Ordinances does not mean that it would be futile for

[the plaintiff] to request a variance – the point of applying for the variance would

be to circumvent the [] Ordinances.").

The Church argues that it should be entitled to discovery so that it can

explore whether submission of even one application would have been futile.  It

asserts that it would seek to depose City Council members to determine if

pursuing the application would have been futile.  The Court holds that the

requested discovery is not warranted because it could not establish futility.  The

Church does not claim that the City was without discretion to grant a variance

(or to apply the zoning requirements that were in effect at the time the

application was initially submitted).  It does not claim that the City had

indicated, in any way, that the Church's application would be futile.  The

opinions of individual City Council members on the project, when no full

application has ever been submitted and no hearing ever held, cannot establish

futility in order to avoid even one meaningful application by the Church:

> The Court, however, cannot speculate on a decision by the City,
> when no decision had, in fact, been made.  Further, as the City []
> correctly points out, . . . the final decision rests with the Board of
> Commissioners after a full public hearing and only after receiving a
> recommendation from the Planning Commission.  To allow [the
> plaintiff] to allege a claim before the Board of Commissioners has
> even voted on the plat application would entirely circumvent the
> finality requirement in Williamson.

GBT P'ship, 2001 WL 1820144, at *5.

Because, given the Church's last-minute withdrawal of its application, the

City was unable to make any decision on the pending permit application – let

alone a final decision – any judicial determination would be purely speculative in

nature.  The futility exception does not apply to the Church's as-applied

challenges to the City's zoning decision.  The City's motion to dismiss the as-

applied portions of Counts One through Five and Eight is granted.

**C.      Mootness of Counts Six and Seven**

The City further argues that, to the extent that Counts Six and Seven rely on the City's enactment of the temporary moratorium, they are moot. The Court concludes that the moratorium claims are not moot.

### 1. Legal Standard for Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) (citations omitted). The "case or controversy" requirement applies to all stages of review. Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994). A case is considered moot when the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Kennedy Bldg. Assocs. v. Viacom, Inc., 375 F.3d 731, 745 (8th Cir. 2004) (citation omitted). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." Lewis, 494 U.S. at 477. If a case has been rendered moot, a federal court no longer has jurisdiction to hear it. Neighborhood Transp. Network, Inc., 42 F.3d at 1172.

The City asserts that Counts Six and Seven, alleging that the City's moratorium violated its Due Process rights as well as the Establishment Clause,

are moot.  The City repealed the moratorium in 2009.  (Compl. ¶¶ 40-43).

Defendant concludes that, because the moratorium is no longer in effect, the

Court is unable to invalidate it, and the Court is unable to provide any effective

relief.

### 2.      Available Relief

The moratorium enacted by the City prohibited any construction of church

buildings within the City for one year and did not act to limit the construction of

other secular facilities.  (Compl. ¶¶ 33-34).  A municipality may enact a

moratorium, or interim ordinance, to protect the "health, safety and welfare of its

citizens" while the municipality conducts studies or holds hearings regarding

changing a comprehensive plan or official controls.  Minn. Stat. § 462.355, subd.

4(a).  The interim ordinance may "regulate, restrict, or prohibit any use,

development, or subdivision within the jurisdiction or a portion thereof not to

exceed one year from the date it is effective."  Id.

The Church argues that the moratorium was illegal.  A city's ability to

enact a moratorium is not unlimited.  See Med. Servs., Inc. v. City of Savage, 487

N.W.2d 263, 267 (Minn. Ct. App. 1992).  The Church asserts that the moratorium

was enacted specifically to delay or derail a single project, and that the proposed

28

Church expansion was the only pending project affected by the moratorium.  See
id. ("A municipality may not arbitrarily enact an interim moratorium ordinance
to delay or prevent a single project.").  In response, Defendant asserts that
"awareness of one particular application does not, in itself, make the City's
actions [in enacting a moratorium] arbitrary or unreasonable." Pawn Am. Minn.,
LCC v. City of St. Louis Park, 787 N.W.2d 565, 573 (Minn. 2010).

The Court concludes that Counts Six and Seven are not moot because the
Church has adequately asserted claims against the City for damages incurred as
a result of the imposed moratorium.  The Church's claims for compensatory and
nominal damages arising out of the alleged injury suffered as a result of the
moratorium are not moot simply because the moratorium is no longer in effect.
See Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 803 (8th Cir.
2006).  The City's argument that the Church has failed to assert a valid damages
claim because the Church, itself, caused the construction delay or because the
church building was never closed, reaches the factual merits of Plaintiff's claim
and is premature at this stage in the judicial process.  Whether or not the Church
may ultimately be successful in winning the damages it seeks does not dictate

whether its claims for damages are moot.  Therefore, the Court denies

Defendant's motion to dismiss Counts Six and Seven on the basis of mootness.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

Defendant City of Medina's Motion to Partially Dismiss Plaintiff's
Complaint [Docket No. 13] is **DENIED IN PART** and **GRANTED
IN PART** as follows:

1. The as-applied challenges to the City's zoning decision, in
   Counts One through Five and Eight, are **DISMISSED
   WITHOUT PREJUDICE** as unripe.

2. The facial challenges to the City's zoning decision, in
   Counts Three, Four, Six, and Seven, **REMAIN**.

3. The challenges to the moratorium, in Counts Six and
   Seven, **REMAIN**.

Dated:   June 25, 2012                        s/ Michael J. Davis
                                              Michael J. Davis
                                              Chief Judge
                                              United States District Court